UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| DANNY McCOWN, JR., | ) |
| | ) |
| Plaintiff, | )   No. 7:20-CV-152-REW |
| | ) |
| v. | ) |
| | )   OPINION & ORDER |
| HYUNDAI MOTOR AMERICA, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Danny McCown, Jr., sued Defendants Hyundai Motor America ("HMA") and Tim Short Pikeville, LLC ("Tim Short") in Floyd Circuit Court alleging product liability claims. *See* DE 1-1 (State Court Record). McCown's claims are based on injuries he allegedly sustained when a car (made by Hyundai, sold by car dealer Tim Short) rolled back and struck him. DE 1-1 at 7. The case proceeded under the normal course until Plaintiff failed to respond to requests for admission submitted by Tim Short. HMA then removed this action to federal court. DE 1. Plaintiff moved to remand, noting that Tim Short is non-diverse.[1] DE 6. After the matter was fully briefed, *see* DE 8 (HMA's response), DE 11 (Tim Short's Response), DE 12 (Plaintiff's Reply), Magistrate Judge Edward B. Atkins recommended that Plaintiff's motion be granted.[2] DE 13 (Report and

---

[1] The citizenship record is imperfect. Plaintiff is a Kentucky citizen, per the state complaint, and HMA is a citizen of California. DE 1 ¶ 7. Tim Short is an LLC, so its citizenship traces to that of its members. *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). The record is silent on that topic. The Court proceeds, for analysis, as if Tim Short is a non-diverse Kentuckian.

[2] Plaintiff's motion included an undeveloped argument regarding attorneys' fees. DE 6-2 at 3. Judge Atkins recommended denying the request. DE 13 at 9. No party objected to this recommendation, which the Court leaves undisturbed. Plaintiff's counsel, who catalyzed this entire endeavor by a Ky. R. Civ. P. 36.01 lapse, is in a weak stance as fee advocate.

1

Recommendation). HMA timely objected. DE 16. McCown and Tim Short did not respond to HMA's objection. The Court, treating the remand recommendation as dispositive, now reviews the objected to matters *de novo*. *See Vogel v. U.S. Off. Prods. Co.*, 258 F.3d 509, 517 (6th Cir. 2001) (holding that "remand motions are dispositive and, as such, can only be entered by district courts"). Because HMA has not met its burden to show fraudulent joinder, the Court **GRANTS** the remand motion.

HMA, as the removing party, has the burden of establishing the Court's jurisdiction. *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 948–49 (6th Cir. 1994) The Court construes the removal statute strictly and resolves doubtful facts against the exercise of jurisdiction. *Huff v. AGCO Corp.*, 5:18-cv-00469-GFVT, 2019 WL 1177970, at *2 (E.D. Ky. 2019) (citing *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006), and *Cole v. Great Atl. & Pac. Tea Co.*, 728 F. Supp. 1305, 1307 (E.D. Ky. 1990)). The removal landscape, or perhaps the lens for assessment, can change as the underlying state matter develops. "A defendant's removal right, however, may extend beyond what is asserted in the plaintiff's complaint to the time when it may first be ascertained that the case is one which is removable." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 465 (6th Cir. 2002). 28 U.S.C. § 1446(b)(3) instructs:

> [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

HMA seeks to invoke the "other paper" portion of § 1446(b)(3); that receipt of proof demonstrating operation of Ky. R. Civ. P. 36.01 to effectuate admissions first made this case removable.

The other paper term under § 1446(b)(3) is considered "expansive" and encompasses "a wide array of documents within its scope." 14C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Juris.* § 3731 (4th ed. 2009) "Thus, as a general matter, 'documents such as

deposition transcripts, answers to interrogatories and requests for admissions, . . . amendments to ad damnum clauses of complaints, and correspondence between the parties and their attorneys or between the attorneys" may constitute "other papers" under § 1446(b)(3)."[3] *Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 365 (6th Cir. 2015) (quoting Wright & Miller, *supra*, § 3731).

HMA bases its removal attempt on diversity jurisdiction. *See* DE 1. To exercise jurisdiction, there must be complete diversity between the parties. *See* 28 U.S.C. § 1332(a)(1); *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999) ("Diversity of citizenship, the basis for jurisdiction in the present case, exists only when no plaintiff and no defendant are citizens of the same state."). HMA concedes that Tim Short is a Kentucky citizen and that the named parties are not fully diverse. DE 1 at 3. Instead, HMA argues that the Court should disregard Tim Short's citizenship on the basis of fraudulent joinder. *Id.* at 3–5.

In relying on fraudulent joinder, the removing party faces a steep burden. *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 954 (6th Cir. 2011). The standard for determining fraudulent joinder is whether the plaintiff states a "colorable cause of action" against the non-diverse defendant. *Jerome-Duncan, Inc.*, 176 F.3d at 907. "Asked another way, the question is 'whether there is arguably a reasonable basis for predicting that the state law might impose liability on the

---

[3] The Court notes in passing the "voluntary act" rule. "A case nonremovable on the initial pleadings can become removable only pursuant to a voluntary act of the plaintiff." *See Hopkins Erecting Co v. Briarwood Apartments of Lexington*, 517 F. Supp. 243, 249 (E.D. Ky. 1981). In this context, though, the Court is wary that the rule would apply. *See Holston v. Carolina Freight Carriers Corp.*, 936 F.2d 573 at *5 (6th Cir. 1991) (unpublished table decision) ("[T]he voluntary act of the plaintiff doctrine was initially developed, and has subsequently been applied almost exclusively in, cases where a non-diverse defendant is dismissed from the case leaving a new state of complete diversity between the parties."). The parties did not raise the issue in briefing before Judge Atkins. The Court does not linger on the matter: Plaintiff's failure to respond to timely requests for admission, to move the state court to set the admissions aside, or to seek any other form of interim relief are all certainly voluntary actions. It is of no importance that the triggering e-mail came from co-defendant's counsel; the e-mail itself was prompted by Plaintiff's voluntary acts and operation of the state rules.

facts involved.'" *Alexander*, 13 F.3d at 949 (quoting *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir. 1968)). If Plaintiff's claims against Tim Short "ha[ve] even a 'glimmer of hope,' there is no fraudulent joinder." *Murriel-Don Coal Co., Inc. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 597 (E.D. Ky. 2011) (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 426 (4th Cir. 1999)).

The Court may "pierce the pleadings" and "consider summary-judgment-type evidence (such as depositions, affidavits, etc.)[.]" *Walker*, 443 F. App'x at 954. However, when considering such evidence, the standard of review does not change; the standard is "akin to that of a Rule 12(b)(6) motion to dismiss" and the Court must construe any contested issues (of law and facts) in McCown's favor. *Id.* The Court does not weigh the merits and apply a summary judgment rubric. Rather, the pleading piercing only allows a sifting for "the presence of *discrete and undisputed facts* that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 953.

Defendants argue that Plaintiff's failure to timely respond to requests for admission means that the requested matters are admitted and conclusively decided. DE 8 at 8–11; DE 11 at 2–4. The admissions, according to Defendants, act to completely negate McCown's claims against Tim Short. DE 8 at 11–15; DE 11 at 3–4. Thus, per HMA, with evidence of a claim demonstrably foreclosed, Tim Short has been fraudulently joined, and its citizenship can be ignored for purposes of determining diversity jurisdiction. DE 8 at 15; DE 11 at 4–6. Plaintiff argues that Defendants are not entitled to use fraudulent joinder because HMA did not carry its burden to prove that the claims against Tim Short are fully untenable. DE 6-2 at 7–9; DE 12 at 3–4.

Judge Atkins determined that the requests for admission went unanswered and that they are "deemed admitted under Ky. CR 36.01." DE 13 at 8. No party objected to this finding. DE 16

4

at 12 (noting agreement with Judge Atkins's admission conclusion). The Court agrees.[4] If there is no answer or objection to the request, the admissions ripen by operation of law and passage of time. *See* Ky. R. Civ. P. 36.01(2) ("The matter is admitted *unless*, within 30 days after service of the request . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney[.]" (emphasis added)). After a Rule 36 admission takes effect, either automatically or by answer, the admission sticks absent relief prompted by motion. *See* Ky. R. Civ. P. 36.02 ("Any matter admitted under Rule 36 is conclusively established *unless* the court on motion permits withdrawal or amendment of the admission." (emphasis added)).

Tim Short served the requests on October 8, 2020. McCown did not respond, timely or otherwise. The Rule operated to deem the matters admitted on or about November 9, 2020. Plaintiff sought no relief in the state forum, pre-removal (on December 2), and his motion in this Court is to remand. Amazingly, the record still contains no effort at substantive responses to the requests.[5] "Once a party has been served with a request for admissions, that request cannot simply be ignored with impunity. . . . [A]n inattentive party served with a request for admissions may run the risk of having judgment entered against him based upon the failure to respond."[6] *Harris v. Stewart*, 981 S.W.2d 122, 124 (Ky. App. 1998).

---

[4] Plaintiff's initial response to the removal attempt was that COVID-19 restrictions stemming from November 9, 2020 events caused the delay in answering the requests for admission. DE 6-2 at 2. Plaintiff's affidavit, however, places the awareness of the COVID-19 exposure on November 20, 2020. *See* DE 6-3. Surely in this day and age of remote engagement, an email or a brief response or extension motion is a light lift.

[5] Notwithstanding McCown's faulty proposed order, *see* DE 6-1 (*see also* Clerk's note on deficiency), the Court does not consider counsel's attempts to invoke out of circuit standards, DE 6-2 at 5–6, and the undeveloped argument, *id.* at 6, as a proper request to withdraw the admissions.

[6] This is not a case where HMA took advantage of a minor delay or, as McCown alleges, "employ[ed] subversive tactics[.]" DE 6-2 at 2. Tim Short served the requests for admissions on October 8th, 2020. DE 1-1 at 45. The due date would have been November 9 or 10. Counsel for

Judge Atkins concluded that the admissions were "not enough to meet HMA's burden." DE 13 at 8. However, with all respect to Judge Atkins's helpful product, HMA's burden was not so high that subsequent conclusive factual determinations, permissible because of § 1443(b)(3), could not foreclose the Complaint's avenue to relief. Changes in a state record, through, *e.g.*, admissions, could snuff any glimmer of hope. The facts in this case are not so unlike a plaintiff's response to deposition questioning. The Sixth Circuit has held that deposition responses can be the "other paper" for the purposes of § 1443(b)(3). *See Peters*, 285 F.3d at 466. The *Peters* court explained that the purpose of § 1446(b)(3) is to "make sure that a defendant has an opportunity to assert the congressionally bestowed right to remove upon being given notice in the course of the case that the right exists." *Id.* (quoting *Huffman v. Saul Holdings Ltd. P'ship*, 193 F.3d 1072, 1077 (10th Cir. 1999)). The Circuit held that such an effect on removal is necessary to "discourage[] disingenuous pleading by plaintiffs in state court to avoid removal."[7] *Id.* (quoting *Addo v. Globe Life Accident Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000). Admissions are surely more conclusive than deposition testimony. The admissions here do not merely *dispute* the Complaint's factual allegations; where applicable, the admissions *displace* them. The admissions are "unassailable

---

Tim Short e-mailed counsel for HMA on November 11, 2020 stating that he deemed the matters admitted with no response. DE 1-2 at 2. HMA did not then rush to the courthouse to remove; it waited until December 2, 2020 to file the notice of removal. *See* DE 1. According to HMA, the first mention of the extenuating circumstances McCown cites were the December 23, 2020 motion to remand. DE 8 at 4 n.2. As of HMA's objection, McCown has yet to serve answers to the request for admissions. DE 16 at 2 n.1.

[7] The Court circumscribes the connotations of "fraudulent" in the doctrine. The analysis "does not depend on a party's subjective intent nor is the term intended to impugn the integrity of a plaintiff or counsel." *Delaney v. Viking Freight, Inc.*, 41 F. Supp. 2d 672, 674 n.3 (E.D. Tx. 1999). "Although false allegations of jurisdictional fact may make joinder fraudulent, in most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success, whatever the plaintiff's motives." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992) (citations removed).

statement[s] of fact" that are "binding" on (*i.e.*, not disputable by other evidence from) the admitting party. *Sec'y U.S. Dep't of Labor v. Kwasny*, 853 F.3d 87, 91 (3d Cir. 2017).

The Court has scrutinized the requests for admission and the claims in the suit. While the admissions cede a lot, they do not cede the full case. "A plaintiff may advance three different [product liability causes of action]: (1) strict liability, (2) negligence, and (3) breach of warranty." *Prather v. Abbott Laboratories*, 960 F Supp. 2d 700, 705 (W.D. Ky. 2013) (citing *Williams v. Fulmer*, 695 S.W.2d 411, 413 (Ky. 1985). Plaintiff alleges the full slate against Tim Short.[8] *See* DE 1-1 Complaint at ¶¶ 22-24.  Critically, McCown alleges that Tim Short "should be held strictly liable as one of the designers, manufacturers, distributors, and *sellers* of" the vehicle. DE 1-1 Complaint at ¶ 22 (emphasis added). The Supreme Court of Kentucky "adopted strict liability in tort for a defective product as expressed in § 402A of the Restatement (Second) of Torts." *Burke Enterprises, Inc. v. Mitchell*, 700 S.W.2d 789, 791 (Ky. 1985) (citing *Dealers Transport Co v. Battery Distributing Co.*, 402 S.W.2d 441 (Ky. 1966)). Put simply, "the Kentucky practice has been to state the liability issue in the terms of [the] Restatement: Did the defendant manufacture, sell or distribute the product in a defective condition unreasonably dangerous to the user?" *Ford Motor Co v. Fulkerson*, 812 S.W.2d 119, 122 (Ky. 1991) (quotations and alterations omitted).

---

[8] McCown's admissions, unless displaced, would likely cover and conclude the negligence and the breach of warranty claims. *See Taylor v. Univ. of the Cumberlands*, Civil Action No. 6:16-cv-00109-GFVT, 2018 WL 4286180, at *4 (E.D. Ky. Sept. 7, 2018) ("[T]o prove that there has been a breach of contract under Kentucky law, 'the complaint must establish three things: 1) the existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract.'"  (quoting *Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009))); *Vaughn v. Konecranes, Inc.*, No. 5:14-136-DCR, 2015 WL 1719672, at *2 (E.D. Ky. Apr. 15, 2015) ("Kentucky law recognizes three theories of products liability: (i) defective design, (ii) defective manufacture, and (iii) failure to warn."). McCown admits no contract and that Tim Short had no active role in product design or manufacture.

Strict liability is a well-established Kentucky liability theory against a retailer. Whether Tim Short directly acted to cause damage (Request No. 1), had a role in design, manufacture, or warning (Request Nos. 5-7) is not conclusive under strict liability. The state of the product, and whether a defect existed and caused harm, is elementally what matters. *See Schall v. Suzuki Motor of Am., Inc.*, 450 F. Supp. 3d 771, 778 (W.D. Ky. 2020) ("In Kentucky, products liability focuses on the strict liability of a defendant for inadequacies in the quality of the product, whereas negligence liability focuses on the conduct of the actor."); *see also Stiens v. Bausch & Lomb Inc.*, No. 2018-CA-1762-MR, 2020 WL 7266398, at *7 (Ky. Ct. App. Dec. 11, 2020) ("[S]trict liability depends on what [a prudent seller or manufacturer] would have anticipated had he been (but regardless of whether he actually was or should have been) aware of the condition of and potentialities inhering in the product when [he] put it on the market." (quoting *Ulrich v. Kasco Abrasives Co.*, 532 S.W.2d 197, 200 (Ky. 1976)). Certainly, the facts of the incident remain for discovery and development. Tim Short, merely the retailer, ultimately may avoid liability on a number of bases.[9] However, McCown included a valid strict liability claim, and the Court does not view the admissions, even if given full effect, as snuffing any glimmer of hope on the recognized theory of retailer liability. They do not foreclose Short as seller or the product as being defective and causing injury. As such, McCown did not fraudulently join Short, the Court has no jurisdiction, and the Court remands to the Floyd Circuit Court.

---

[9] The Court views the ambiguous query of whether Tim Short "is responsible" as meaning whether Tim Short had factual involvement in the design or manufacture. As to the "parked" position question, the answer is a fact, perhaps a key fact, in the assessment of the case, but the Court, viewing an event of little detail on this record, cannot say that the answer is conclusive on whether the Santa Fe did or did not have a defect that caused injury. The Complaint, of course, directly alleges that the Santa Fe was "parked" at the time. It takes the operation of Ky. R. Civ. P. 36.01 too far to deem this admission as enervating the full content of the Complaint.

Accordingly, the Court adopts DE 13 to the extent of no objection, agrees with the result of DE 13 on this de novo treatment, and **GRANTS** DE 6.

This the 23rd day of April, 2021.

Signed By:
*Robert E. Wier*
United States District Judge